UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____

No 07-CV-4209 (JFB) (ETB)
_____

CHRISTOPHER R. CARTHEW,

Plaintiff,

VERSUS

COUNTY OF SUFFOLK, ET AL.,

Defendants.

_____

**MEMORANDUM AND ORDER**
May 6, 2010
_____

JOSEPH F. BIANCO, District Judge:

Plaintiff Christopher Carthew brings this case against defendants Suffolk County, the Suffolk County Police Department, Commissioner Richard Dormer, Police Officer Nicholas Vezzi, and John and Jane Doe ("defendants"). The case stems from plaintiff's July 10, 2006 arrest by the Suffolk County Police for allegedly violating an order of protection. Plaintiff alleges the police lacked probable cause to arrest him and brings claims under 42 U.S.C. § 1983 for false arrest, malicious prosecution, failure to train, and violation of his due process rights and under New York state law for false arrest, malicious prosecution, and negligent infliction of emotional injury.

This lawsuit focuses upon the arrest and prosecution of plaintiff for the events on July 10, 2006, when his wife claimed that he violated an order of protection against him by showing up at her job at a commercial building in Bohemia, New York. Plaintiff had also called the police and claimed that the building was his place of business, not that of his wife.

On July 27, 2009, defendants moved for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons that follow, defendants' motion is granted on the § 1983 claims. The Court concludes that, based upon the undisputed facts, there was probable cause to arrest plaintiff as a matter of law. Specifically, even under plaintiff's version of the events, it is undisputed that, before arresting plaintiff, defendant Vezzi had learned (1) plaintiff was under court order to

"stay away" from his wife; (2) plaintiff knew he was subject to this order; (3) plaintiff, when he arrived at the building, knew his wife was present in the building (and, in fact, called 911 and told the dispatcher that "she's in there"); and (4) despite his wife's presence in the building, plaintiff decided to enter the building prior to the arrival of the police. It is also uncontroverted that, when the police arrived, plaintiff told Officer Vezzi that, although he worked there, the business was in his wife's name. Those undisputed facts were sufficient to establish probable cause to arrest and prosecute for violation of the order of protection, even with the existence of a dispute at the scene over whether it was plaintiff's place of employment or that of his wife, or both.

In any event, even assuming *arguendo* that there was not probable cause to arrest and prosecute, Officer Vezzi is entitled to qualified immunity because, even under plaintiff's version of the information available to the police on that date and drawing all reasonable inferences in plaintiff's favor, officers of reasonable competence could disagree over whether there was probable cause to arrest. Although plaintiff would like to second guess the officer's decision to arrest, a reasonable police officer thrust into this potentially volatile situation even under the factual circumstances as described by plaintiff—regarding a dispute between a husband and wife as to whether an order of protection had been violated when the husband entered a building knowing that the wife was inside—could reasonably conclude that probable cause existed for the arrest and prosecution of plaintiff for violation of the order of protection. Given the circumstances, Officer Vezzi was not required to act as judge or jury to resolve this dispute regarding whether the building was the place of employment of the plaintiff and/or his wife before arresting plaintiff for violation of the order of protection. Moreover, because there is no underlying constitutional violation because of the existence of probable cause, the *Monell* claim against Suffolk County also cannot survive summary judgment.

Given that the federal claims do not survive summary judgment, the Court, in its discretion, declines to exercise supplemental jurisdiction over the state law claims contained in the complaint.

I. BACKGROUND

A. Factual Background

The following facts are taken from the parties' depositions, declarations, exhibits, and respective Local Rule 56.1 statements of facts.[1] Upon consideration of a motion for summary judgment, the Court construes the facts in the light most favorable to the non-moving party. *See Capobianco v. City of New York*, 422 F.3d 47, 50 n.1 (2d Cir. 2005). Thus, with regard to defendants' motion for summary judgment, the Court shall construe the facts in favor of plaintiff.

On July 10, 2006, plaintiff called Suffolk County 911 while outside of a commercial building on Sycamore Avenue in Bohemia. He told the operator "my wife is in my office, she's locked all my doors, and I can't get into my office." (Defs.' 56.1 ¶ 1; Defs.' Ex. A.) Three minutes later, Suffolk 911 received a call from Beth Carthew, plaintiff's wife, who was also at the building on Sycamore Avenue.

---

[1] Where one party's Local Rule 56.1 statement is cited, the fact is not contested by the other party.

2

She told the operator that "I have an Order of Protection against my husband and he just showed up to my job and he is pretty irate so I just walked out of the building." (Defs.' 56.1 ¶ 2.)

Suffolk Police, including defendant Nicholas Vezzi, responded to the scene of the calls. (*Id.* ¶¶ 3, 7.) Upon arriving, Officer Vezzi encountered Beth Carthew in the parking lot. Beth Carthew told Vezzi she had called 911, that she had an order of protection against her husband, and that her husband had come to her place of work. (*Id.* ¶¶ 4-5; Pl.'s 56.1 ¶ 5.) Furthermore, Beth Carthew provided Vezzi with a copy of the order of protection, which had been issued by Nassau County District Court on June 20, 2006, approximately three weeks earlier. (Defs.' 56.1 ¶ 6.) The order of protection required plaintiff to "stay away" from Beth Carthew "wherever she may be." (Defs.' Ex. F.)

Officer Vezzi then entered the building and found plaintiff, who had gone inside at some point after calling 911.[2] Plaintiff told the officer that the building was his place of business and that his wife had an order of protection against him. (Defs.' 56.1 ¶ 9.) Plaintiff also said that he knew his wife was on the premises when he arrived and that the business was in his wife's name. (*Id.* ¶ 10.) Officer Vezzi then returned to his patrol car to check on the validity of the order of protection and, according to plaintiff, to ask his supervisors whether plaintiff should be arrested. (Defs.' 56.1 ¶¶ 12-13; Pl's. 56.1 ¶ 12.) Beth Carthew also signed a Domestic Incident Report, a sworn statement regarding what she had alleged occurred. (Defs.' 56.1 ¶ 13.) After verifying the order of protection was valid, and obtaining the sworn statement from Beth Carthew, Officer Vezzi arrested plaintiff for violation of the Order of Protection. (*Id.* ¶¶ 13, 15.) Plaintiff was charged with Criminal Contempt in the Second Degree based on the alleged violation of the protective order, although this charge was eventually dismissed. (*Id.* ¶¶ 15, 17.)

B. Procedural History

On October 9, 2007, plaintiff brought this action, naming Suffolk County, the Suffolk County Police Department, Richard Dormer, John Doe, and Jane Doe as defendants. On July 8, 2009, upon defendants' consent, Police Officer Nicholas Vezzi was added to the caption of the case as a named defendant. (*See* Docket 21.) Plaintiff alleges that, under 42 U.S.C. § 1983, his arrest and prosecution violated his Fourth and Fourteenth Amendment rights. (Compl. ¶¶ 26-32.) He also asserts claims under § 1983 that Suffolk County maintains an unconstitutional mandatory arrest policy and that the County has failed to adequately train its police officers to respond to situations involving orders of protection. (*See id.* ¶¶ 33-42.) Finally, he brings state law claims for false arrest (*Id.* ¶¶ 43-47), malicious prosecution (*Id.* ¶¶ 48-50), and negligent infliction of emotional injury. (*Id.* ¶¶ 51-54.)

Following discovery, defendants moved for summary judgment. The Court held oral argument on the motion on December 15, 2009. At oral argument, defendants requested that they be allowed to submit additional

---

[2] The circumstances of plaintiff's entry into the building are disputed. (*See* Defs.' 56.1 ¶ 5; Pl's. 56.1 ¶ 5; Christopher Carthew Dep. at 26-27.) As discussed *infra*, however, this dispute is not material to the issue of whether Officer Vezzi had probable cause to arrest plaintiff.

3

briefing on the issue of qualified immunity. The Court granted the request, and both parties made additional submissions dealing with qualified immunity. The matter is now fully submitted.

II. STANDARD OF REVIEW

The standards for summary judgment are well settled. Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is appropriate only if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Reiseck v. Universal Commc'ns of Miami, Inc.*, 591 F.3d 101, 104 (2d Cir. 2010). The moving party bears the burden of showing that he or she is entitled to summary judgment. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the moving party has met its burden, the opposing party "'must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*.'" *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (emphasis in original)). As the Supreme Court stated in *Anderson*, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted). Indeed, "the mere existence of *some* alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. *Id.* at 247-48 (emphasis in original). Thus, the nonmoving party may not rest upon mere conclusory allegations or denials but must set forth "'concrete particulars'" showing that a trial is needed. *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (quoting *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir. 1978)). Accordingly, it is insufficient for a party opposing summary judgment "'merely to assert a conclusion without supplying supporting arguments or facts.'" *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996) (quoting *Research Automation Corp.*, 585 F.2d at 33).

III. DISCUSSION

A. Plaintiff's Claims Under 42 U.S.C. § 1983

Plaintiff brings claims under 42 U.S.C. § 1983 for false arrest, malicious prosecution,[3] failure to train, and violation of his due process rights. As set forth below, defendants are entitled to summary judgment on these

---

[3] Plaintiff does not explicitly assert a § 1983 malicious prosecution claim, but the Court will construe the complaint as asserting one. (*See* Compl. ¶ 28 ("Defendants lacked probable cause to arrest and prosecute [plaintiff].").)

4

claims because Officer Vezzi had probable cause to arrest plaintiff based upon the undisputed facts in the case.

1. Proper Defendants

Before addressing the merits of plaintiff's § 1983 claims, the Court will first address the issue of which defendants may properly be sued under which of plaintiff's § 1983 theories. As a threshold matter, the Suffolk County Police Department is not a proper defendant on any of plaintiff's § 1983 claims. It is well settled that an entity such as the Suffolk County Police Department is an "administrative arm" of the same municipal entity as Suffolk County and thus lacks the capacity to be sued. *See, e.g.*, *Caidor v. M&T Bank*, No. 5:05-CV-297, 2006 U.S. Dist. LEXIS 22980, at *6-7 (N.D.N.Y. Mar. 27, 2006) ("'Under New York law, departments which are merely administrative arms of a municipality, do not have a legal identity separate and apart from the municipality and cannot sue or be sued.'" (quoting *Hall v. City of White Plains*, 185 F. Supp. 2d 293, 303 (S.D.N.Y. 2002))); *Davis v. Lynbrook Police Dep't*, 224 F. Supp. 2d 463, 477 (E.D.N.Y. 2002) (dismissing claim against Lynbrook Police Department because "[u]nder New York law, departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and, therefore, cannot sue or be sued").

Additionally, Suffolk County is not a proper defendant on plaintiff's § 1983 claims for false arrest and malicious prosecution. Municipal governments, like Suffolk County, may be sued only for unconstitutional or illegal policies, not for the illegal acts of their employees. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Nor is defendant Richard Dormer—the Suffolk County Police Commissioner[4]—a proper defendant on the false arrest and malicious prosecution claims. For an individual to be liable under § 1983, the individual must have been personally involved in the alleged constitutional deprivation. *Farid v. Ellen*, 593 F.3d 233, 249 (2d Cir. 2010) ("'It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" (quoting *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006))). Here, Plaintiff has not alleged Dormer was personally involved in his arrest or prosecution. Thus, defendant Nicholas Vezzi is the only named defendant who may properly be sued on the false arrest and malicious prosecution claims.

Finally, Suffolk County is the only proper defendant on plaintiff's "failure to train" claim and his due process claims, which relate to Suffolk County's policies and procedures for making arrests in situations involving orders of protection. To the extent plaintiff also seeks to hold the individual defendants liable on these claims in their official capacities, those claims are duplicative of the municipal liability claim lodged against the County. *See, e.g.*, *Tsotesi v. Bd. of Educ.*, 258 F. Supp. 2d 336, 338 n.10 (S.D.N.Y. 2003) (dismissing claims against officials sued in their official capacities where plaintiff also sued municipality (citing *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985))); *see also Monell*, 436 U.S. at 691 (holding that "official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent"). Thus, only

---

[4] (*See* Compl. ¶ 4.)

Suffolk County is a proper defendant on these claims.

Having determined which defendants are subject to suit on which § 1983 claims, the Court now turns to the merits of those claims.

2. Claims for False Arrest and Malicious Prosecution

To prevail on a claim under § 1983, a plaintiff must show: (1) the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, (2) by a person acting under the color of state law. 42 U.S.C. § 1983. "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)). "Claims for false arrest or malicious prosecution, brought under § 1983 to vindicate the Fourth and Fourteenth Amendment right to be free from unreasonable seizures, are 'substantially the same' as claims for false arrest or malicious prosecution under state law." *Jocks v. Tavernier*, 316 F.3d 128, 134 (2d Cir. 2003) (citing *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (false arrest) and *Conway v. Village of Mount Kisco*, 750 F.2d 205, 214 (2d Cir. 1984) (malicious prosecution)).

a. False Arrest

i. Applicable Law

The Second Circuit has established that "'[t]he existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest, whether that action is brought under state law or under § 1983." *Jenkins v. City of N.Y.*, 478 F.3d 76, 84 (2d Cir. 2007) (quoting *Weyant*, 101 F.3d at 852). In general, probable cause is established where "the [arresting] officer has 'knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested.'" *Finigan v. Marshall*, 574 F.3d 57, 62 (2d Cir. 2009) (quoting *Zellner v. Summerlin*, 494 F.3d 344, 368 (2d Cir. 2007)); *see also Weyant*, 101 F.3d at 852 (citing *Dunaway v. New York*, 442 U.S. 200, 208 n.9 (1979) (additional citations omitted)). Furthermore, "[t]he validity of an arrest does not depend upon an ultimate finding of guilt or innocence." *Peterson v. County of Nassau*, 995 F. Supp. 305, 313 (E.D.N.Y. 1998) (citing *Pierson v. Ray*, 386 U.S. 547, 555 (1967)). "Rather, the court looks only to the information the arresting officer had at the time of the arrest." *Id.* (citing *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)). Moreover, a determination of probable cause is based upon the "totality of the circumstances, and where law enforcement authorities are cooperating in an investigation . . . , the knowledge of one is presumed shared by all." *Calamia v. City of N.Y.*, 879 F.2d 1025, 1032 (2d Cir. 1989) (internal citations and quotations omitted); *see also Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994) (citing *Illinois v. Gates*, 462 U.S. 213, 230 (1982)). "The question of whether or not probable cause existed may be determinable as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers, or may require a trial if the facts are in dispute." *Weyant*, 101 F.3d at 852 (citations omitted).

ii. Application

Here, no reasonable jury could find that Officer Vezzi lacked probable cause to arrest plaintiff based upon the undisputed facts. Plaintiff does not dispute that, when Vezzi arrived at the scene, Beth Carthew told him that she had an order of protection against plaintiff and also provided Vezzi with a copy of the order. (Defs.' 56.1 ¶ 5-6.) Moreover, although plaintiff disputes that Beth Carthew told Officer Vezzi that plaintiff was banging on the door and forced his way into the building, it is undisputed, based upon the 911 tape, that Beth Carthew told the police that plaintiff "showed up to [her] job" and that he was "pretty irate so [she] just walked out of the building." (Defs.' 56.1 Ex. A.) Thus, it is undisputed that Beth Carthew reported to the police that plaintiff had shown up at her job in violation of the order of protection.

Probable cause can exist solely based on information from an alleged victim—such as Beth Carthew here—"unless circumstances raise doubt as to the person's veracity." *Curley v. Village of Suffern*, 268 F.3d 65, 69-70 (2d Cir. 2001) (affirming district court's grant of summary judgment to defendants on false arrest claim because statements from alleged assault victims established probable cause); *see, e.g.*, *Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000) ("We have previously held that police officers, when making a probable cause determination, are entitled to rely on the victims' allegations that a crime has been committed."); *Stokes v. City of N.Y.*, 05-cv-0007(JFB)(MDG), 2007 WL 1300983, at *5 (E.D.N.Y. May 3, 2007) ("[T]he Second Circuit and other courts have found probable cause to exist where, in the absence of circumstances raising doubts as to the victim's veracity, the police received information directly from a purported victim of a crime without a formal written complaint.").

Although plaintiff argues that the circumstances surrounding the incident—namely, the fact that plaintiff called 911 first and claimed that Beth Carthew had shown up at his place of employment—creates an issue of fact regarding potential doubt as to her veracity, the Court disagrees because the information supplied by plaintiff to Officer Vezzi at the scene provided additional information to support the conclusion that plaintiff had violated an order of protection. Specifically, after speaking to Beth Carthew, Vezzi spoke to plaintiff. It is undisputed that plaintiff admitted to Vezzi that his wife had an order of protection against him. (Defs.' 56.1 ¶ 9.) It is also undisputed that Vezzi returned to his car and verified the existence of the order of protection. (*See id.* ¶¶ 12-13; Pl.'s 56.1 ¶¶ 12-13.) In cases involving arrests for violating a protective order, courts in this circuit have found that the arresting officer's awareness of the protective order is itself a significant factor in establishing probable cause. *See, e.g.*, *Dudley v. Torres*, No. 05 Civ. 1729 (RJD)(LB), 2008 WL 2149603, at *5 (E.D.N.Y. May 21, 2008) (granting summary judgment to defendant police officer on false arrest claim because, despite plaintiff's claims of innocence, officer had probable cause based on order of protection and victim's complaint that plaintiff violated order); *Welch v. City of N.Y.*, 95-Civ-8953(RPP), 1997 WL 436382, at *5 (S.D.N.Y. Aug. 4, 1997) (granting summary judgment to defendant police officer on false arrest claim where it was undisputed that officer verified the validity of an order of protection and was told by precinct desk officer that arrest was mandatory), *aff'd*, 166 F.3d 1203 (2d Cir. 1998) (summary order);

see also *Mura v. Erie County Sheriff Dep't*, No. 03-CV-6093, 2005 WL 615754 at *3-4 (W.D.N.Y. Mar. 16, 2005) (finding deputy sheriff had "ample probable cause" to arrest plaintiff for violation of protective order after verifying order's validity and unsuccessfully attempting to get plaintiff to leave premises); *Otero v. Jennings*, 698 F. Supp. 42, 46 (S.D.N.Y. 1988) (protective order provided probable cause for arrest).

Moreover, plaintiff admitted to Vezzi that he knew his wife was at the building when he arrived that morning[5] but that he nonetheless remained on the premises and, in fact, proceeded inside. In particular, in his deposition, plaintiff acknowledged that, *after* he called 911 to tell the police that his wife was in the building, he decided to enter the building. (Christopher Carthew Dep. at 26-28.) In sum, the undisputed facts establish that, before arresting plaintiff, Vezzi had learned (1) plaintiff was under court order to "stay away" from his wife, (2) plaintiff knew he was subject to this order, (3) plaintiff, when he arrived at the building, believed his wife was present in the building and called 911,[6] and (4) despite his wife's presence, plaintiff had elected to remain on the premises and went inside prior to the arrival of the police.[7]

Based on these undisputed facts, Vezzi had probable cause to arrest plaintiff for criminal contempt as a matter of law. Under New York law, the crime of criminal contempt in the second degree requires that (1) a valid protective order existed, (2) the defendant knew about that order, and (3) the defendant intended to violate the order. *See* N.Y. Penal L. § 215.50(3); *see also People v. Williams*, 696 N.Y.S.2d 369, 370 (N.Y. Crim. Ct. 2004) ("To establish the crime of criminal contempt in the second degree pursuant to Penal Law § 215.50(3) there must exist a lawful order of a court clearly expressing an unequivocal mandate, and there must be an intentional violation of the order. Thus, the defendant must have known of the order and the defendant's 'conscious objective' must have been to violate the order."). Here, it is

---

[5] (Defs.' 56.1 ¶ 10.) Vezzi had also learned this fact from the police dispatcher while responding to the scene. The dispatcher told responding officers that plaintiff had stated "his wife was at the business." (Vezzi Dep. at 6-7.) The dispatcher's knowledge was apparently based on plaintiff's 911 call in which plaintiff stated to the dispatcher: "Well were [sic] going through a divorce, and this is my place of business, I own the building and she just came in here before me and *she's in there*. She locked everything, all my guys are around the parking lot, she won't let anyone in." (Defs.' 56.1 ¶ 1, Ex. A (emphasis added).)

[6] Plaintiff confirmed in an affidavit submitted with his opposition to the summary judgment motion that he called 911 because he believed his wife was in the building. (*See* Aff. of Christopher Carthew, ¶ 3 ("Believing that my then wife Beth Carthew, with whom I was going through a bitter divorce at the time, may have locked me out of the building, I called 911 to request help.").) As noted *supra*, this fact is clear from the plaintiff's 911 call in which he stated "she's in there" and "[s]he locked everything . . . [and] won't let anyone in." (Defs.' 56.1, Ex. A.)

[7] Plaintiff confirmed this fact not only to the police at the time of the incident, but also in his affidavit in opposition to the summary judgment motion: "Shortly after my call to the police, my service manager Don opened the door and let me in, apparently hearing my knocks on the door . . . . Upon entering the building, I walked into my private office, about fifteen feet from the door, to start working and wait for the police to arrive." (Aff. of Christopher Carthew, ¶ 5.)

8

undisputed that Officer Vezzi knew the protective order existed and that plaintiff was also aware of the protective order. Additionally, plaintiff's intent to violate the order could be inferred from his presence at the building after he realized that his wife was also there. *Cf. Krause v. Bennett*, 887 F.2d 362, 371 (2d Cir. 1989) (noting that "it is impossible" for arresting officer to say with certainty that an individual possessed a given state of mind and finding that officer was "entitled to rely on the implications of the information known to him in assessing whether" arrestee possessed a particular mental state). Taken together, these undisputed facts gave Officer Vezzi a reasonable basis for believing that plaintiff had committed the crime of criminal contempt in the second degree.

Plaintiff claims that there are disputed issues of material fact as to whether Officer Vezzi had probable cause. First, plaintiff faults Officer Vezzi for not crediting plaintiff's claim that the building was his place of business and that Beth Carthew did not work there.[8] The Court disagrees. Probable cause does not require that the police rule out innocent explanations for the suspect's activities. *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997) ("Once a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest."); *Curley*, 268 F.3d at 70 ("Although a better procedure may have been for the officers to investigate plaintiff's version of events more completely, the arresting officer does not have to prove plaintiff's version wrong before arresting him."); *Krause*, 887 F.2d at 372 ("It is up to the factfinder to determine whether a defendant's story holds water, not the arresting officer. Once officers possess facts sufficient to establish probable cause, they are neither required nor allowed to sit as prosecutor, judge, or jury.") (internal citation omitted); *Rae v. County of Suffolk*, - - - F. Supp. 2d - - -, No. 07-CV-2738 (RRM)(ARL), 2010 WL 768720, at *6 (E.D.N.Y. Mar. 5, 2010) ("While, in hindsight, it may be that Voight could have asked additional questions, or conducted a fuller investigation, the role of the court is not to overly scrutinize the decisions of police officers from its vantage in chambers, long after those decisions were made, but to determine whether the officers acted reasonably and in compliance with what the law requires based on what they knew at the time."); *Cornett v. Brown*, No. 04-CV-0754 (DGT) (LB), 2006 WL 845568, at *7 (E.D.N.Y. Mar. 30, 2006) ("[W]hile an arresting officer may not disregard information known to him in making an arrest, he is not required 'to investigate exculpatory defenses offered by the person being arrested or to assess the credibility of unverified claims of justification before making an arrest.'" (quoting *Jocks*, 316 F.3d at 135-36)).

This, however, is exactly what plaintiff claims Officer Vezzi should have done. Although plaintiff told Vezzi that he worked at the building, Beth Carthew had told Vezzi she worked at the building, and plaintiff had also admitted to Vezzi that Beth Carthew owned the business. (*See* Defs.' 56.1 ¶¶ 9-

---

[8] Although plaintiff claimed that Beth Carthew did not work there at the time, it is uncontroverted that he also acknowledged to the officer that the business was in his wife's name. (Vezzi Dep. at 13, 15.) Moreover, at his deposition, plaintiff also explained that, although Beth Carthew was an officer of the company and receiving weekly paychecks, she was not showing up to work there every day. (Christopher Carthew Dep. at 34-36.)

9

10.) Vezzi was not required to resolve the question of which Carthew was entitled to be on the premises at that time. What matters is that there was a valid protective order against plaintiff and that Christopher Carthew had apparently decided to enter and remain on the premises despite knowing that Beth Carthew was also present. *Cf. Krause*, 887 F.2d at 372 (stating that the function of police officers "is to apprehend those suspected of wrongdoing, and not to finally determine guilt through a weighing of the evidence"). These facts established probable cause to believe plaintiff had violated the order of protection.

Therefore, although plaintiff faults the officer for not interviewing employees at the business to determine if plaintiff worked there and for not noticing that plaintiff clearly had an established office in the business (with personal photos on the wall), these arguments, as well as the other lists of "disputed facts" miss the point. These facts, whether disputed or not, do not alter the probable cause determination based upon the undisputed facts: regardless of whose place of employment it was, plaintiff entered the building after the 911 call with a belief that his wife was inside. As Officer Vezzi repeatedly stated at this deposition, he concluded that plaintiff had violated the order of protection because plaintiff, who believed his wife was inside at the time of the 911 call, had an obligation to stay out of the business until the police arrived and could resolve the situation but instead chose to enter the building and had contact with Beth Carthew: "He was not to be near Beth Carthew as it stated, anywhere near her, whether the place of employment around the school, her home and the fact he stated he saw her vehicle at the location 1615 Sycamore Avenue and he knew she was there and then still proceeded to go inside the building after she opened the door, he violated the Order of Protection." (Vezzi Dep. at 15; *see also id.* at 18 ("The fact that Mr. Carthew stated, and it's also recorded on 911, he showed up and his wife was there he has a duty to retreat, contact 911 and say there's an Order of Protection in effect."); *id.* at 38 ("He tried to gain access to the building after knowing his wife was there. As he stated, he stated he knew his wife was there. He saw her car.").) Given Beth Carthew's statement that the Order of Protection had been violated and these undisputed facts (even after he spoke with Mr. Carthew), the Court concludes that Officer Vezzi had probable cause to arrest plaintiff, and these other "disputed facts" do not alter that probable cause determination because they did not give him a basis to doubt the veracity of Beth Carthew.[9]

---

[9] In his opposition to the motion, plaintiff relies heavily on the fact that the state court dismissed the charge as facially insufficient, based upon the information and supporting deposition, to establish that the incident occurred at the victim's place of employment, rather than Mr. Carthew's place of employment. As a threshold matter, on appeal of that dismissal, the Appellate Term affirmed the dismissal on different grounds than those relied on by the lower court. Specifically, the Appellate Term concluded that there was no allegation in the charging instrument that Mr. Carthew knew of the order of protection and, thus, the information had to be dismissed as jurisdictionally defective. *See People v. Carthew*, 19 Misc.3d 138(A), 2008 WL 1886605, at *1-2 (N.Y. App. Term Apr. 21, 2008). Clearly, on the record before this Court, it is undisputed that plaintiff had knowledge of the Order of Protection and that the officers were aware of such knowledge. In fact, at plaintiff's deposition, plaintiff admitted he told the Officer Vezzi, "My wife has an Order of Protection against me." (Christopher Carthew Dep. at 31.) As to the lower court opinion, the only information that the

Second, plaintiff contends that, because he called 911, there is an issue of fact as to whether had the requisite intent to violate the protective order. In other words, plaintiff's argument is that if he intended to violate the order, he would not have reported himself to the police. This argument is without merit. As discussed above, the probable cause determination relies on the "totality of circumstances," and given the other information—particularly, the undisputed evidence regarding plaintiff's decision to enter the building even though he knew his wife was on the premises—there was ample basis for Officer Vezzi to conclude plaintiff intended to violate the order.

Finally, plaintiff disputes, at some length, the circumstances of his entry into the building and also says there is an issue of fact regarding whether he intended to remain at the scene once police arrived. (*See* Pl.'s 56.1 ¶¶ 5-6.) These issues are largely irrelevant—and certainly not material—to the issue of whether probable cause existed. As noted *supra*, regardless of whether plaintiff, for example, banged on the door or knocked on the door,[10] it is undisputed that plaintiff knew Beth Carthew was in the premises when he arrived at the site and that he nonetheless remained there and, in fact, proceeded to enter the building before the police arrived.[11] Given these undisputed facts, no reasonable jury could find that Vezzi lacked probable cause to arrest plaintiff. In sum, defendants are entitled to summary judgment on plaintiff's § 1983 false arrest claim.

b. Malicious Prosecution

Additionally, the Court finds that

---

court had before it was the charging instrument and supporting deposition. Therefore, any probable cause determination in a motion to dismiss regarding the facial validity of the charging instrument based upon the limited information contained therein is inapposite to the probable cause question in this lawsuit because this Court has before it additional (and critical) undisputed facts that were not explicit in the supporting deposition and were not before the state court—namely, regardless of whose place of employment it was, that plaintiff knew his wife was in the building and yet intentionally entered the building before the police arrived—which establish probable cause for the arrest as a matter of law for the reasons discussed above. In fact, at oral argument, plaintiff's counsel acknowledged that the state court's dismissal was "based upon the four corners of the information and in this case, in all fairness to the defendant, there are, there is, other evidence." (Tape of Oral Argument of December 15, 2009, at Counter 5:12.)

[10] (*Compare* Defs.' 56.1 ¶ 5 *with* Pl.'s 56.1 ¶ 5.)

[11] To the extent that plaintiff's counsel suggested at oral argument that a person can never violate an order of protection by going to his or her own place of business even if he or she knows the protected person is inside the building, the Court disagrees. Individuals are not given the discretion to violate orders of protection, or "stay away" orders, even when they know the protected person is in the location, based upon their belief that they have the right to be present at a particular residence or business. Instead, in order to avoid a potential arrest for contempt, such individuals should seek police assistance and/or a modification of the order to allow entry. Here, plaintiff initially did that by calling 911 but then decided to enter the building before the police arrived—thus, creating probable cause to arrest as a matter of law. Of course, Officer Vezzi also had the statements of Beth Carthew claiming that it was her place of employment, which provided additional grounds for probable cause, independent of plaintiff's own acknowledgment that he entered the building knowing that she was present.

11

defendants should be granted summary judgment on plaintiff's malicious prosecution claim. To succeed on a malicious prosecution claim under § 1983, a plaintiff must show (1) that the defendant commenced or continued a criminal proceeding against him; (2) that the proceeding was terminated in the plaintiff's favor; (3) that there was no probable cause for the proceeding; and (4) that the proceeding was instituted with malice. *Droz v. McCadden*, 580 F.3d 106, 109 (2d Cir. 2009); *Drummond v. Castro*, 522 F. Supp. 2d 667, 677-78 (S.D.N.Y. 2007). Malicious prosecution claims under § 1983 also require that there "'be a seizure or other 'perversion of proper legal procedures' implicating the claimant's personal liberty and privacy interests under the Fourth Amendment.'" *Conte v. County of Nassau*, 06-CV-4746 (JFB)(ETB), 2008 WL 905879, at *11 (E.D.N.Y. Mar. 31, 2008) (quoting *Washington v. County of Rockland*, 373 F.3d 310, 316 (2d Cir. 2004)).

Here, the first two elements are met. It is undisputed that a criminal proceeding was instituted against plaintiff and that this proceeding terminated in his favor. As to the third element, "probable cause" for malicious prosecution purposes is assessed "'in light of facts known or reasonably believed at the time the prosecution was initiated,'" and not at the time of arrest. *Drummond*, 522 F. Supp. 2d at 678 (quoting *Carson v. Lewis*, 35 F. Supp. 2d 250, 263 (E.D.N.Y. 1999)). However, if the police had probable cause to arrest, a plaintiff in a malicious prosecution case must show that facts emerged following the arrest to vitiate probable cause. *Id.* (granting summary judgment to defendants on malicious prosecution claim because police had probable cause to arrest plaintiff and plaintiff's alibi and character reference from employer did not defeat probable cause); *see also Torraco v. Port Auth. of N.Y. & N.J.*, 539 F. Supp. 2d 632, 652-53 (E.D.N.Y. 2008) (granting summary judgment to defendants on malicious prosecution claim because probable cause existed for arrest and plaintiff's allegations regarding additional, post-arrest information were "speculation"); *Coyle v. Coyle*, 354 F. Supp. 2d 207, 213 (E.D.N.Y. 2005) (dismissing malicious prosecution claim where defendants had probable cause to arrest plaintiff and were not made aware of any facts that would negate probable cause). In this case, plaintiff has not made the Court aware of any post-arrest facts that would alter the initial finding of probable cause. As such, the Court grants summary judgment to the defendants on this claim.[12]

---

[12] To the extent plaintiff alleges a § 1983 claim against Officer Vezzi under the Due Process Clause, defendants are entitled to summary judgment on that claim as well. "Due process requires probable cause for an arrest, and when police officers acting in bad faith make an arrest without probable cause, the person arrested has suffered a deprivation of liberty without due process of law." *United States v. McDermott*, 918 F.2d 319, 325 (2d Cir. 1990). Accordingly, because Officer Vezzi had probable cause to arrest plaintiff, any due process claim cannot survive summary judgment. *See Clark v. Dowty*, No. 05-CV-1345 (WWE), 2007 U.S. Dist. LEXIS 49184, at *18 (D. Conn. Jul. 9, 2007) ("Because the Court has already found that probable cause existed for the arrest of plaintiff, there was no violation of his substantive or procedural due process rights regarding this claim." (citing *Lucky v. City of N.Y.*, No. 03-CV-1983 (DLC), 2004 U.S. Dist. LEXIS 18672, at *6 (S.D.N.Y. Sept. 21, 2004))); *see also N.Y. State Nat'l Org. for Women v. Pataki*, 261 F.3d 156, 172-73 (2d Cir. 2001) ("Because no constitutional violation has been shown, the plaintiffs' procedural due process claims are dismissed with prejudice.").

### c. Qualified Immunity

Even assuming *arguendo* Officer Vezzi lacked probable cause and the arrest and prosecution violated plaintiff's rights under the Fourth and Fourteenth Amendments, the arresting officer would still be entitled to summary judgment on qualified immunity grounds. As set forth below, even taking plaintiff's version of the information available to the police that day as true and drawing all reasonable inferences in plaintiff's favor, officers of reasonable competence could disagree on whether the probable cause test was met. Thus, qualified immunity is warranted.

The doctrine of qualified immunity shields government officials from civil liability if their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). As the Second Circuit has noted, "[t]his doctrine is said to be justified in part by the risk that the 'fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties.'" *McClellan v. Smith*, 439 F.3d 137, 147 (2d Cir. 2006) (quoting *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999)). Thus, qualified immunity is not merely a defense but rather is also "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Accordingly, the availability of qualified immunity should be decided by a court "at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

Relevant to this case, an arresting officer is entitled to qualified immunity on claims of false arrest and malicious prosecution if either: (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met. *Walczyk v. Rio*, 496 F.3d 139, 163 (2d Cir. 2007); *Posr v. Court Officer Shield No. 207*, 180 F.3d 409, 416 (2d Cir. 1999) (quoting *Golino v. City of New Haven,* 950 F.2d 864, 870 (2d Cir. 1991)). The issue of "reasonableness" for purposes of probable cause is distinct from the issue of "reasonableness" for purposes of qualified immunity. *See Kerman v. City of N.Y.*, 374 F.3d 93, 116 (2d Cir. 2004); *see also Anderson v. Creighton*, 483 U.S. 635, 641 (1987) ("It simply does not follow immediately from the conclusion that it was firmly established that warrantless searches not supported by probable cause and exigent circumstances violate the Fourth Amendment that [the] search was objectively legally unreasonable."). In *Anderson*, the Supreme Court held that "it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials—like other officials who act in ways they reasonably believe to be lawful—should not be held personally liable." 483 U.S. at 641.

The Second Circuit has defined this standard, which is often referred to as "arguable probable cause," as follows:

> Arguable probable cause exists when a reasonable police officer in the same circumstances and possessing the same knowledge as the officer in question *could* have reasonably believed that probable cause existed in the light of well established law.

13

> It is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials—like other officials who act in ways they reasonably believe to be lawful—should not be held personally liable.

*Cerrone v. Brown*, 246 F.3d 194, 203 (2d Cir. 2001) (quotations and citations omitted) (emphasis in original). Moreover, under this standard, "an 'arresting officer is entitled to qualified immunity as a matter of law if the *undisputed facts* and all permissible inferences favorable to the plaintiff show . . . that officers of reasonable competence could disagree on whether the probable cause test was met.'" *McClellan v. Smith*, 439 F.3d 137, 147-48 (2d Cir. 2006) (quoting *Robison v. Via*, 821 F.2d 913, 921 (2d Cir. 1987)).

For the same reasons that the Court concludes that probable cause existed to arrest plaintiff, the Court also finds that Officer Vezzi, at the very least, had arguable probable cause to arrest plaintiff. In supplemental briefing on the qualified immunity issue, plaintiff submitted a "Supporting Deposition for Civilian Witnesses" that Beth Carthew made on the date of plaintiff's arrest. In it, Beth Carthew wrote that Christopher Carthew "came to work today at King Quality, drove around back, and saw my car. Chris then tried to get into the building but the [unclear] locked. He knows he is not to be around me and would not leave. This violates my order of protection . . . . I went [unclear] and Chris [unclear] it open and walked right in."

Citing this statement, plaintiff argues that Officer Vezzi lacked probable cause because Beth Carthew admitted—by writing the phrase "came to work"—that plaintiff worked at the building. The Court disagrees. Again, as noted above, Officer Vezzi had conflicting information as to which of the Carthews was entitled to be on the premises. Qualified immunity protects from personal liability under § 1983 officers who make reasonable judgment calls under the circumstances—particularly when, as here, the officer is put in the middle of a heated and potentially volatile familial dispute. *See, e.g.*, *Mistretta v. Prokesch*, 5 F. Supp. 2d 128, 136 (E.D.N.Y. 1998) (stating "[t]he doctrine of qualified immunity protects office[r]s who err on the side of removing one of the prospective combatants from the scene"). *See generally Lee v. Sandberg*, 136 F.3d 94, 104 (2d Cir. 1997) ("In sum, given the extraordinarily difficult judgment decisions that law enforcement officers must make in domestic violence situations, and the presence of factors here that suggest that [alleged victim's] statements were not incredible, we hold that as a matter of law, the State Troopers' actions were objectively reasonable.") As Judge Cogan explained in a § 1983 action in which he granted summary judgment in favor of New York City police officers who arrested plaintiff for allegedly violating orders of protection:

> Police officers in this situation are in a delicate position that is reflected in the standard for probable cause. If an officer accepts the view of the complaining witness, he may find himself a defendant in an action like this. But it can be worse. If the officer determines to reject the complainant's view and the

defendant who is the subject of the Order of Protection commits an act of violence against that complainant—and there are reported instances in which the failure to enforce led to horrific consequences—the officer may find himself sued for not taking aggressive enough action in enforcing the Order.

*Little v. P.O. Massari*, 526 F. Supp. 2d 371, 377 (E.D.N.Y. 2007) (internal citations omitted); *see also Reynolds v. Jamison*, 488 F.3d 756, 768-69 (7th Cir. 2007) ("Law enforcement officers often encounter competing and inconsistent stories. If officers were required to determine exactly where the truth lies before acting, the job of policing would be very risky financially as well as physically. Police would respond by disbelieving witnesses (or not acting on allegations) lest they end up paying damages, and the public would suffer as law enforcement declined." (quotations and citation omitted)).

Both the Supreme Court and the Second Circuit have emphasized that "[n]ormally, it is only the 'plainly incompetent or those who knowingly violate the law'—those who are not worthy of the mantle of the office—who are precluded from claiming the protection of qualified immunity." *Moore v. Andreno*, 505 F.3d 203, 214 (2d Cir. 2007) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). Here, there is no evidence that Officer Vezzi's conduct was plainly incompetent or that he engaged in a knowing violation of the law, and, thus, Officer Vezzi is entitled to qualified immunity. As noted earlier, it is undisputed that, before arresting plaintiff, Officer Vezzi had learned that (1) plaintiff was under court order to "stay away" from Beth Carthew; (2) plaintiff knew he was subject to this order; (3) plaintiff knew Beth Carthew was present when he arrived at the building; and (4) plaintiff nonetheless chose to remain on the premises and, indeed, proceeded inside the building. On these facts, even drawing all reasonable inferences in plaintiff's favor, Officer Vezzi "could have reasonably believed that probable cause existed" to arrest plaintiff. *Cerrone*, 246 F.3d at 203. Therefore, at a minimum, defendant Vezzi is entitled to the defense of qualified immunity as to the false arrest and malicious prosecution claims. This Court's decision is consistent with numerous other courts, which have found, under analogous circumstances, that qualified immunity existed for an arrest made for violation of an order based upon information provided by a complainant. *See, e.g.*, *Rae*, 2010 WL 768720, at *7 (holding that officers had qualified immunity in making the arrest for violation of the order of protection); *Dudley*, 2008 WL 2149603, at *5-6 (same); *Little*, 536 F. Supp. 2d at 377-78 (same); *Welch*, 1997 WL 436382, at *5 (same); *see also Martin v. Russell*, 563 F.3d 683, 686 (8th Cir. 2009) (same).

Accordingly, even assuming *arguendo* that probable cause was lacking, Officer Vezzi is entitled to summary judgment on qualified immunity grounds because there was arguable probable cause to arrest.

### 3. *Monell* Claims

Plaintiff also asserts § 1983 claims against Suffolk County for failing to adequately train police officers and for promulgating a "Mandatory Arrest Policy" in cases involving alleged violations of protective orders. As set forth below, the County is entitled to summary judgment on these claims.

Under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), a municipal entity may be held liable under § 1983 where a plaintiff demonstrates that the constitutional violation complained of was caused by a municipal "policy or custom." *Monell*, 436 U.S. at 694-95; *Patterson v. County of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004) (citing *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 733-36 (1989) and *Monell*, 436 U.S. at 692-94). "The policy or custom need not be memorialized in a specific rule or regulation." *Kern v. City of Rochester*, 93 F.3d 38, 44 (2d Cir. 1996) (citing *Sorlucco v. N.Y. City Police Dep't*, 971 F.2d 864, 870 (2d Cir. 1992)). A policy, custom, or practice of the municipal entity may be inferred where "'the municipality so failed to train its employees as to display a deliberate indifference to the constitutional rights of those within its jurisdiction.'" *Patterson*, 375 F.3d at 226 (quoting *Kern*, 93 F.3d at 44). However, a municipal entity may only be held liable where the entity *itself* commits a wrong; "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691.

Here, it is not disputed that Suffolk County maintains a "Mandatory Arrest Policy" in situations involving an alleged violation of a protection order. (*See* Defs.' Mem. of Law at 6-8.) However, because probable cause existed for plaintiff's arrest—and, therefore no constitutional violation occurred—no *Monell* claim can lie against Suffolk County. *See, e.g.*, *Vippolis v. Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985) ("A plaintiff who seeks to hold a municipality liable in damages under section 1983 must prove that the municipality was, in the language of the statute, the 'person who . . . subjected, or cause[d] [him] to be subjected,' to the deprivation of his constitutional rights." (citing 42 U.S.C. § 1983)); *Wray v. City of N.Y.*, 490 F.3d 189, 196 (2d Cir. 2007) (granting summary judgment to city on *Monell* claim because police officer's conduct did not deprive plaintiff of his constitutional rights); *Torraco*, 539 F. Supp. 2d at 652 ("[S]ince the individual defendants did not violate plaintiffs' rights, there can be no liability against the Port Authority."). Therefore, the Court grants defendants' motion for summary judgment as to plaintiff's *Monell* claims.[13]

---

[13] The Court also concludes that, even assuming *arguendo* that the absence of an underlying constitutional violation did not preclude the *Monell* claims in this case, the County would still be entitled to summary judgment on those claims because of the absence of any evidence of an unconstitutional policy, practice, or custom by the County, or a failure to supervise or train, as it relates to the issues in this case. Although plaintiff's counsel claimed at oral argument that plaintiff was not challenging the legality of the mandatory arrest policy itself as it relates to violations of orders of protection, there is no evidence of any other policy or practice put forth by plaintiff. Thus, plaintiff's *Monell* claims must necessarily rest on the mandatory arrest policy of Suffolk County which applies when there is probable cause to believe that there is a violation of an order of protection. However, that is not merely a policy of Suffolk County but rather has been codified in New York State law. *See* New York Crim. Proc. Law § 140.10(4)(b). Therefore, in subjecting individuals to mandatory arrest when there is probable cause to believe that an order of protection is violated, the County is simply following state law, and there is no basis to find the County's actions based upon that law to be unconstitutional. Accordingly, there is no evidence to support any *Monell* claim in this case.

16

B. State Law Claims

Plaintiff also asserts claims under New York State law for false arrest, malicious prosecution, and negligent infliction of emotional injury. (*See* Compl. ¶¶ 43-54.)

Having determined that plaintiff's federal claims do not survive summary judgment, the Court concludes that retaining jurisdiction over any state law claims is unwarranted. 28 U.S.C. § 1367(c)(3); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). "In the interest of comity, the Second Circuit instructs that 'absent exceptional circumstances,' where federal claims can be disposed of pursuant to Rule 12(b)(6) or summary judgment grounds, courts should 'abstain from exercising pendent jurisdiction.'" *Birch v. Pioneer Credit Recovery, Inc.*, No. 06-CV-6497T, 2007 WL 1703914, at *5 (W.D.N.Y. June 8, 2007) (quoting *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 53 (2d Cir. 1986)).

Therefore, in the instant case, the Court, in its discretion, "'decline[s] to exercise supplemental jurisdiction'" over plaintiff's state law claims because "it 'has dismissed all claims over which it has original jurisdiction.'" *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting 28 U.S.C. § 1367(c)(3)); *see also Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 250 (2d Cir. 2008) ("We have already found that the district court lacks subject matter jurisdiction over appellants' federal claims. It would thus be clearly inappropriate for the district court to retain jurisdiction over the state law claims when there is no basis for supplemental jurisdiction."); *Karmel v. Claiborne, Inc.*, No. 99 Civ. 3608 (WK), 2002 WL 1561126, at *4 (S.D.N.Y. July 15, 2002) ("Where a court is reluctant to exercise supplemental jurisdiction because of one of the reasons put forth by § 1367(c), or when the interests of judicial economy, convenience, comity and fairness to litigants are not violated by refusing to entertain matters of state law, it should decline supplemental jurisdiction and allow the plaintiff to decide whether or not to pursue the matter in state court.").

Accordingly, pursuant to 28 U.S.C. § 1367(c)(3), the Court declines to retain jurisdiction over the remaining state law claims given the absence of any federal claims that survive summary judgment and dismisses such state claims without prejudice.

IV. CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is granted in its entirety on the federal claims. The Court declines to retain jurisdiction over plaintiff's remaining state law claims and dismisses such claims without prejudice. The Clerk of the Court shall enter judgment accordingly and close this case.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: May 6, 2010
Central Islip, New York

\* \* \*

Attorney for plaintiff is Steven R. Haffner of Gordon & Haffner, LLP, 18-15 215th Street, Suite 4J, Bayside, NY 11360. Attorney for defendants is Christine Malafi, Suffolk

County Department of Law, 100 Veterans Memorial Highway, Hauppauge, NY 11788 by Richard T. Dunne.